UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA          :    INDICTMENT
:
           - v. -                 :    13 Cr. 616
:
ROBERT LUSTYIK,                   :
JOHANNES THALER, and              :
RIZVE AHMED,                      :
   a/k/a "Caesar,"                :
:
              Defendants.         :
:
- - - - - - - - - - - - - - - - - - x

COUNT ONE

(Conspiracy to Bribe Public Official)

The Grand Jury charges:

Background

1.   At all times relevant to this Indictment, ROBERT LUSTYIK, the defendant, was a Special Agent with the Federal Bureau of Investigation ("FBI"), assigned to do counterintelligence work in the New York Division, White Plains Resident Agency ("White Plains R.A."). JOHANNES THALER, the defendant, was a childhood friend of LUSTYIK's. RIZVE AHMED, a/k/a "Caesar," the defendant, was an acquaintance of THALER's from a retail store where they worked together in Danbury, Connecticut. AHMED was a native of Bangladesh.

2.   The FBI was a department and agency of the United States with responsibility for investigating crimes and offenses

recognizable under the authority of the United States. In furtherance of that responsibility, personnel within the FBI, including LUSTYIK, were privy to internal law enforcement information regarding pending investigations and cases within the FBI.

3. Included among the FBI internal law enforcement information, to which LUSTYIK was privy, were Suspicious Activity Reports, the disclosure of which is prohibited, except by government authorities as necessary to fulfill official duties.

4. The FBI required that information contained within its files and databases not be publicly released because the information contained in those files could inform the target or subject of an investigation of the existence of that investigation; provide the target or subject of the investigation with information that might enable the target to avoid detection or apprehension; be used to harm the target, subject, or witness of an investigation; and otherwise present a serious impediment to law enforcement.

### The Conspiracy

5. From in or about September 2011 through in or about March 2012, in the Southern District of New York and elsewhere, ROBERT LUSTYIK, JOHANNES THALER, and RIZVE AHMED, a/k/a "Caesar," the defendants, together with others known and

unknown, unlawfully and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, soliciting bribes by a public official, and offering bribes to a public official, in violation of Title 18, United States Code, Sections 201(b)(1) and 201(b)(2).

### Objects of the Conspiracy

6. It was an object of the conspiracy that ROBERT LUSTYIK and JOHANNES THALER, the defendants, corruptly demanded, sought, received, accepted, and agreed to accept monetary payments from RIZVE AHMED, a/k/a "Caesar," the defendant, in exchange for LUSTYIK's doing and omitting to do acts in violation of his official duty, in violation of Title 18, United States Code, Section 201(b)(2).

7. It was a further object of the conspiracy that RIZVE AHMED, a/k/a "Caesar," the defendant, corruptly gave, offered, and promised monetary payments to ROBERT LUSTYIK and JOHANNES THALER, the defendants, in exchange for LUSTYIK's doing and omitting to do acts in violation of his official duty, in violation of Title 18, United States Code, Section 201(b)(1).

## Means and Methods of the Conspiracy

8. The conspiracy was accomplished through the following means and methods:

   a. ROBERT LUSTYIK and JOHANNES THALER, the defendants, solicited payments of money from RIZVE AHMED, a/k/a "Caesar," the defendant, in exchange for LUSTYIK's agreement to provide internal, confidential government documents, and other confidential information to which LUSTYIK had access by virtue of his position as an FBI Special Agent and for LUSTYIK's agreement to provide official assistance to interfere with an investigation.

   b. RIZVE AHMED, a/k/a "Caesar," the defendant, sought, among other things, to obtain confidential government documents and information about a prominent citizen of Bangladesh who was affiliated with a political party opposed to the party with which AHMED was affiliated ("Individual 1"), to locate Individual 1, and to harm Individual 1, and to obtain confidential government documents and information about a pending investigation and LUSTYIK's official assistance to interfere with the investigation.

## Overt Acts

9. In furtherance of the conspiracy and to effect the illegal objects thereof, ROBERT LUSTYIK, JOHANNES THALER, and RIZVE AHMED, a/k/a "Caesar," the defendants, together with

4

others known and unknown, committed the following overt acts, in the Southern District of New York and elsewhere:

   a.  In or about September 2011, THALER and AHMED discussed Individual 1, and AHMED's opinion that Individual 1 was associated with corruption in Bangladesh.

   b.  On or about September 15, 2011, AHMED sent an email to THALER about, among other things, Individual 1 and corruption allegations.

   c.  On or about September 22, 2011, THALER forwarded to LUSTYIK an email he had received from AHMED about, among other things, Individual 1 and corruption allegations.

   d.  On or about September 26, 2011, LUSTYIK caused an FBI employee in the White Plains R.A. to enter an FBI database of FBI documents and retrieve an internal FBI memorandum that referred to, among other things, Individual 1 and a sum of $300 million (the "FBI Memo")

   e.  On or about September 27, 2011, October 13, 2011, and November 3, 2011, LUSTYIK caused FBI Special Agents and employees in the White Plains R.A. to enter a law enforcement database and retrieve a confidential report, known as a Suspicious Activity Report, pertaining to, among other things, Individual 1 ("the SAR").

   f.  In or about late October 2011, LUSTYIK, in a series of emails describing a "master plan" to THALER, wrote,

"So. Here is my master plan. . . .we use info from [a] source within the current Bang govt and sell it to caesar's people. No one knows . . .no one gets hurt."

      g.    In or about December 2011, LUSTYIK and THALER agreed to provide confidential government documents and other information to AHMED in exchange for cash.

      h.    In or about December 2011, AHMED agreed to provide cash to THALER and LUSTYIK in exchange for confidential government documents and information.

      i.    In or about December 2011, AHMED represented to THALER in a series of text messages that AHMED was working with associates who were willing to pay cash for additional information.

      j.    On or about December 9, 2011, THALER and AHMED met at a food court in a shopping mall in Danbury, Connecticut.

      k.    During the meeting or in and around the time period of the meeting, THALER provided the FBI Memo and the SAR to AHMED.

      l.    During the meeting or in and around the time period of the meeting, AHMED provided a sum of cash to THALER.

      m.    On or about December 10, 2011, LUSTYIK and THALER sent text messages to each other about the meeting the previous day between THALER and AHMED. In the text messages, LUSTYIK and

THALER discussed the meeting and a plan to obtain further bribes from AHMED and AHMED's associates:

> LUSTYIK: Hey did u see cezar?  Did he pay u?
>
> THALER: Yeah.  I got some for you.  We need to talk about Bangladesh.
>
> LUSTYIK: Ok.  He gave u a grand?  And r they ready to play?
>
> THALER: Yes on both
>
> LUSTYIK: Monthly money?
>
> THALER: Not sure.  C's [associate] is flying to bang today to meet with [a Bangladeshi political figure] . . . .

n.   On or about December 16, 2011, THALER and AHMED sent text messages to each other, in which THALER solicited regular cash payments, in increments of tens of thousands of dollars, from AHMED in exchange for confidential information:

> THALER: Why don't we just do the contract.  40 up front, 30 monthly and we can give you everything we have plus set up [Individual 1] and get the inside from the party.  That would be easier than negotiating every piece of info.
>
> AHMED: That's fine but they have to have some idea what you have . . . .  They aren't going to sign something not knowingly n give u the money . . . .  I don't need any documents or anything.  Just give me some idea what exactly you have on them . . .  The last documents you gave me about $300 millions.  How far that investigation went n what they found.  Give me some idea and I will get u that contract!!!

7

> THALER: Ok. I'll let you know.
>
> AHMED: I'm working for u n myself . . . . If this works out, I will be the hero to my party!!!
>
> THALER: We can make that happen
>
> AHMED: Get me some info on 3000000 mil file. Thanks.

o.  On or about December 17, 2011, LUSTYIK and THALER sent text messages to each other about obtaining regular cash payments, in increments of tens of thousands of dollars, from AHMED in exchange for confidential information, for undertaking efforts to tarnish Individual 1's reputation, for information about Individual 1's residence, and for assistance in ending a law enforcement investigation:

> LUSTYIK: So. How much is this contract w cezar? And what r they expecting from it? And can we get like 20 gs quick?
>
> THALER: Our original terms. $40 retainer and $30 monthly. They want everything on [Individual 1] plus getting [a Bangladeshi political figure's] charges dropped. . . .

p.  In text messages on or about December 17, 2011, LUSTYIK provided additional confidential information to THALER. THALER responded, in part and substance, that AHMED and his associates would ask for proof, and THALER asked LUSTYIK for more information. LUSTYIK responded, "Tween me n u? Cause we could make money on it."

q.   Later on or about the same day, December 17, 2011, THALER provided to AHMED confidential government information that THALER had received from LUSTYIK in text messages earlier that day.

r.   In or about December 2011 and January 2012, LUSTYIK and THALER made arrangements to meet with AHMED and AHMED's associate whom AHMED claimed held a political position in Bangladesh.

s.   In text messages in late December 2011 and early January 2012, LUSTYIK and THALER wrote:

> THALER:   [AHMED's associate] wants to meet both of us. Especially you because you're the man.
>
> . . . .
>
> LUSTYIK:  Hey we need to push Cezar for this meeting and get that 40 gs quick. . . . Let's just meet them. I will talk us into getting the cash. . . . I will work my magic . . . . We r sooooooo close.
>
> THALER:   I know. It's all right there in front of us. Pretty soon we'll be having lunch in our oceanfront restaurant . . . .

t.   On or about January 29, 2012, LUSTYIK, THALER, AHMED, and another individual, an associate of AHMED's, met in the vicinity of Danbury, Connecticut. They discussed, among other things, exchanging confidential government information in exchange for cash payments.

u. On or about January 30, 2012, LUSTYIK and THALER wrote text messages to each other about obtaining cash payments from AHMED.

v. On or about January 30, 2012, THALER informed AHMED in a series of text messages, in part and substance, that LUSTYIK and THALER would withhold information regarding Individual 1 until they received additional cash from AHMED. AHMED responded in a text message, in part and substance, that he and his associates would turn instead to another source for information about Individual 1, a "ret FBI agent."

w. On or about January 30, 2012, LUSTYIK sent a text message to THALER expressing dismay at AHMED's use of a "ret FBI agent" for additional confidential government information, stating, "What?  A retired FBI agent?  Who is going to be asked about info I showed them??????? I am so screwed."

x. On or about January 30, 2012, in a series of text messages, LUSTYIK and THALER plotted revenge on AHMED for his failure to provide them additional cash payments in exchange for confidential government information:

> LUSTYIK: I was counting on that cash.  Feel so fcuked. . . . I'm so fkn pissed at C.  I thought all this was worked out. . . . Tell c Bob is just going to go to other side of coin. No worries.
>
> THALER: You have [Individual 1's] number.  I'm sure he'd be interested in what we talked about.  Maybe he actually pays

10

. . . .

    LUSTYIK:    I want to kill C . . . . Fcuking C.  Let's kick his ass.  Show them.  I hung my ass out the window n we got nothing? . . . . Tell him.  I've got [Individual 1's] number.  And I'm pissed. . . . [L]et's destroy them.  I will put a wire on n get them to admit they want her offed n we sell it to [Individual 1].

    THALER:    I know.  That's what I was thinking.  I'm sure [Individual 1] would pay good money for that

. . . .

    LUSTYIK:    Its ok.  No retired guy can get it.  They will have to come back n we will double it.  That's what u tell them.

. . . .

    LUSTYIK:    So bottom line.  I need ten gs asap.  We gotta squeeze C . . . . Call him n make him realize no retired guy can help them.  Also remind him that I deal w Interpol. . . . [L]et them sweat.  They need us more than we need them.  Who knows maybe the guys we met with could end up being terrorists or something damaging like that.

    y.    On or about February 1, 2012, AHMED sent a text message to THALER, offering to pay $10,000 in exchange for confidential government information.

    z.    On or about February 1, 2012, THALER responded to AHMED's text message, stating, "We can do whatever you guys need.  We just can't do it on good faith.  Once we see some money you'll get everything you want."

aa. On or about February 18, 2012, LUSTYIK sent an email to THALER containing confidential government information regarding Individual 1.

bb. On or about March 12, 2012, AHMED sent an email to THALER with a photo depicting a handful of cash and inviting LUSTYIK to exchange additional information for the cash.

(Title 18, United States Code, Section 371.)

## COUNT TWO

### (Soliciting Bribes by a Public Official)

The Grand Jury further charges:

10. The allegations set forth in paragraphs 1 through 9 are repeated and realleged as if set forth fully herein.

11. From in or about September 2011 through in or about March 2012, in the Southern District of New York and elsewhere, ROBERT LUSTYIK and JOHANNES THALER, the defendants, while LUSTYIK was a public official, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept things of value personally and for other persons, and aided and abetted the same, in return for being induced to do and omit to do acts in violation of the official duty of LUSTYIK, to wit, LUSTYIK solicited cash payments, and THALER aided and abetted LUSTYIK in soliciting cash payments, in return for disclosing confidential government information to

which LUSTYIK had access by virtue of his position as a Special Agent with the FBI.

(Title 18, United States Code, Sections 201 (b)(2)(C) and 2.)

### COUNT THREE

### (Offering Bribes to a Public Official)

The Grand Jury further charges:

12. The allegations set forth in paragraphs 1 through 9 are repeated and realleged as if set forth fully herein.

13. From in or about September 2011 through in or about March 2012, in the Southern District of New York and elsewhere, RIZVE AHMED, a/k/a "Caesar," the defendant, directly and indirectly, corruptly gave, offered, and promised things of value to a public official, and offered and promised a public official to give things of value to another person, and aided and abetted the same, with intent to induce such public official to do and omit to do acts in violation of the lawful duty of such official, to wit, AHMED gave and offered cash payments to ROBERT LUSTYIK and JOHANNES THALER with intent to induce LUSTYIK to disclose confidential government information to which LUSTYIK had access by virtue of his position as a Special Agent with the FBI.

(Title 18, United States Code, Sections 201(b)(1)(C) and 2.)

COUNT FOUR

(Conspiracy to Defraud the Citizens of the United States and the Federal Bureau of Investigation)

The Grand Jury further charges:

14. The allegations set forth in paragraphs 1 through 9 are repeated and realleged as if set forth fully herein.

15. From in or about September 2011 through in or about March 2012, in the Southern District of New York and elsewhere, ROBERT LUSTYIK, JOHANNES THALER, and RIZVE AHMED, a/k/a "Caesar," the defendants, together with others known and unknown, unlawfully and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346.

16. It was an object of the conspiracy that ROBERT LUSTYIK, JOHANNES THALER, and RIZVE AHMED, a/k/a "Caesar," the defendants, together with others known and unknown, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property from the United States by means of materially false and fraudulent pretenses, representations, and promises, and to deprive the citizens of the United States and the Federal Bureau of Investigation of their right to the honest services of LUSTYIK, for the purpose of executing such

14

scheme and artifice, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, to wit, emails, telephone calls, and text messages, in violation of Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Section 1349.)

## COUNT FIVE

### (Theft of Government Property)

The Grand Jury further charges:

17. The allegations set forth in paragraphs 1 through 9 are repeated and realleged as if set forth fully herein.

18. From in or about September 2011 through in or about March 2012, in the Southern District of New York and elsewhere, ROBERT LUSTYIK, the defendant, unlawfully and knowingly, embezzled, stole, purloined, and knowingly converted to the use of himself and the use of others, and without authority, sold, conveyed, and disposed of records, vouchers, money, and things of value of the United States and of departments and agencies thereof, and property made and being made under contract for the United States and departments agencies thereof, with a value of more than $1,000, and aided and abetted the same, to wit, LUSTYIK obtained for his own use confidential government

information and documents to which he had access by virtue of his position as a Special Agent with the FBI and conveyed the information and records to JOHANNES THALER, RIZVE AHMED and others without authorization.

(Title 18, United States Code, Sections 641 and 2.)

## COUNT SIX

### (Receiving Stolen Government Property)

The Grand Jury further charges:

19. The allegations set forth in paragraphs 1 through 9 are repeated and realleged as if set forth fully herein.

20. From in or about September 2011 through in or about March 2012, in the Southern District of New York and elsewhere, JOHANNES THALER and RIZVE AHMED, a/k/a "Caesar," the defendants, unlawfully and knowingly received, concealed, and retained records, vouchers, money, and things of value of the United States and of departments and agencies thereof, and property made and being made under contract for the United States and departments and agencies thereof, which had been embezzled, stolen, purloined and knowingly converted to the use of ROBERT LUSTYIK and the use of others, with a value of more than $1,000, and which had been, without authority, sold, conveyed, and disposed of by LUSTYIK, and aided and abetted the same, to wit, THALER and AHMED knowingly received confidential government information and documents which LUSTYIK had obtained for his own

unauthorized use and the unauthorized use of others and to which LUSTYIK had access by virtue of his position as a Special Agent with the FBI.

(Title 18, United States Code, Sections 641 and 2.)

### COUNT SEVEN

**(Unauthorized Disclosure of a Suspicious Activity Report)**

The Grand Jury further charges:

21. The allegations set forth in paragraphs 1 through 11 are repeated and realleged as if set forth fully herein.

22. From in or about September 2011 through March 2012, ROBERT LUSTYIK, the defendant, an officer of a federal authority, willfully violated subchapter II of Title 31 and a regulation and order prescribed thereunder, namely Section 1023.320(e)(2) of Title 31 of the Code of Federal Regulations, by disclosing a Suspicious Activity Report ("SAR"), and information that would reveal the existence of a SAR, which disclosure was not necessary to fulfill LUSTYIK's official duties, to wit, LUSTYIK disclosed a SAR, which he obtained by virtue of his position as a Special Agent with the FBI, in order to solicit and obtain bribes in the form of cash payments.

(Title 31, United States Code, Section 5322(a).)

### FORFEITURE ALLEGATIONS

25. As a result of committing the offense charged in Count Four, ROBERT LUSTYIK, JOHANNES THALER, and RIZVE AHMED, a/k/a

17

"Caesar," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(D), and Title 28, United States Code, Section 2461, any property, real or personal, that constitutes or is derived from proceeds traceable to said offense, including but not limited to a sum of United States currency representing the amount of proceeds obtained by the defendants as a result of the charged offense.

### Substitute Asset Provision

26. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third person;

    c.   been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or;

    e.   has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section

853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981(a)(1)(D); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney


JACK SMITH
Chief
Public Integrity Section

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ROBERT LUSTYIK, JOHANNES THALER, and RIZVE AHMED, a/k/a "Caesar,"

Defendants.

INDICTMENT

13 Cr. 616

(18 U.S.C. §§ 201, 371, 641, 1349, and 2, 31 U.S.C. § 5322)

PREET BHARARA
United States Attorney.

A TRUE BILL

*[signature]*
Foreperson.